EDWIN A. TURNER v. LYMAN G. MASON.

*Contract for painting portrait—Compensation of artist—Damages
—Statute of frauds.*

1. The compensation of an artist is not generally measured by intrinsic merit, either of himself or of his pictures, and until recognized as a celebrity he seldom charges, or has a right to expect, very high prices, and the pecuniary value of his work cannot, as a rule, be tested by what some other artist may think of it as a work of art. Such an opinion may be pertinent concerning its character as a good painting or a poor one; but where a picture is not meant for sale, and would not be readily marketable, *its salable* value is no test of what the artist *earned* in painting it.

2. Where an artist set up in business in a city, and, after dealing with a patron for pictures, agreed to paint him others from photographs furnished, but no fixed price was agreed upon,—
   *Held,* that, if the patron was to pay what the pictures were reasonably·worth, he could not be supposed to contemplate any price not in fair proportion to what was to be paid for the other pictures furnished, or for the usual work of the artist.

3. Where in *such* a case the paintings were never delivered, and there was a conflict of testimony concerning defendant's liability for a frame prepared for one of them,—
   *Held,* that he could not, in any event, be compelled to pay more than the difference between the cost of the frame and its value to plaintiff if left on his hands, nor could it be assumed judicially that the picture was a total loss to the plaintiff.

4. Where an artist agreed to reproduce from photographs furnished pictures of his patron's children,—
   *Held,* that the portraits were not ordered as chattels having any *marketable* value, but as productions involving as their *only* value the artistic work and labor of the artist, and their successful presentation of the children to be represented.

Error to Muskegon. (Russell, J.) Argued April 13, 1887, Decided April 28, 1887.

Assumpsit. Defendant brings error. Reversed. The facts are stated in the opinion.

*Keating & Dickerman* (*Blair*, *Kingsley & Kleinhans*, of counsel), for appellant.

*Arthur Jones*, for plaintiff.

CAMPBELL, C. J. Plaintiff, who is an artist, sued defendant for professional work in finishing one picture, and partially finishing two others. A question was made on the argument concerning the form of the declaration, which does not seem to us important, because the facts are set up, which, if true, would show the nature of the claim; and, as all the testimony was put in showing what was done on both sides, any technical defects could be readily amended. We shall therefore confine ourselves to questions raised on the controversy itself. An outline of the dispute will be sufficient.

Plaintiff on his own motion had in some way been able to get a likeness painted of a child of defendant, a little boy, and after it was finished defendant learned of it, and bought it. Defendant had two little girls, then very young, of whom he had photographs, and plaintiff, in 1882, agreed to paint portraits from these photographs, to be finished in water colors, and furnish frames, for between $45 and $50 each. These he partly finished in drawing, preparatory to painting. They were not satisfactory, and there is some conflict as to the further action of the parties concerning the change of plan. On some terms, which are disputed, an arrangement was made to lay this work aside, and make one picture of the two little girls, of life size, in pastel, from a photograph representing the two together. The price, according to defendant, was to be $150. Plaintiff claims no price was agreed on, and that the painting was worth $350. He also claims that Mrs. Mason selected from a set of patterns a pattern for a frame which would cost about $50. This frame was put up before the picture was done. During the progress of the painting, which ran along some years, some changes were made to rectify defects, chiefly of style. The painting

never was delivered, and never tendered directly, if at all, and defendant was never informed how much he was to be charged until a bill was sent to him by mail, in somewhat uncivil terms, in the summer of 1885, of which he took no notice, and a subsequent demand was made through a lawyer, and this suit was begun. Defendant pleaded the general issue, and also set-off, which was made out to the amount of $240. The jury rendered a verdict of $210.75, which included apparently all that plaintiff claimed, being $50 for the unfinished pictures, and $400 for the large picture and frame.

It was claimed on the argument that the contract sued on was one for the sale of chattels exceeding $50 in value, and within the statute of frauds. But we do not think it was a contract of sale. The first portrait of the little boy was a chattel already in existence as a finished picture, and was sold and delivered as such. But the other portraits were not ordered as chattels having any marketable value, but as productions involving as their only value the artistic work and labor of plaintiff, and their successful presentation of the children to be represented. It does not seem to us that there is any doubt about the fact that the whole value was to arise out of the work of the artist on materials of no particular value, and for a result of more value to the parents than to any one else. We do not think the case calls for any discussion of the statute of frauds regarding sales.

There was testimony indicating that the portraits were fairly reproduced, although there was dissatisfaction with some of the accessories and style of the picture. The court instructed the jury satisfactorily on several branches of the case, but complaint is made of the refusal to give some of defendant's requests, and concerning some rulings on the elements and measure of damages, and the reception of evidence on that subject.

Nothing was said in the charge concerning the long delay of the artist, during which the children grew and changed in

appearance, and more or less difficulty must have been created in determining the merits of the portraits. It cannot be true that artists can delay indefinitely the filling of orders, and there was enough in the case to indicate that this question should not have been overlooked,. especially as the case does not show very clearly, if at all, that any notice was given calling on defendant to accept the picture. The defendant swore that the picture was subject to approval, and this theory was given to the jury, but nothing was said about the time of performance as bearing on the duty to accept. Reference was also made in the charge to a tender of the picture, upon which the record is defective. As no specific assignment of error is made on these grounds, they are only significant in their bearing on some other questions raised.

The charge directed the jury to give as damages "what this picture is worth, and what Mr. Turner's services are worth for producing this picture as it has been produced, and the frame;" and, in getting at this value, they were told to take into consideration the exhausting studies necessary to acquire skill as an artist, the time consumed and the expenses incurred to acquire great professional knowledge and distinction.

It appeared on the trial, and is matter of common knowledge, that the compensation of artists is not generally measured by intrinsic merit, either of themselves or of their pictures. Until he is recognized as a celebrity, an artist seldom charges, or has a right to expect, very high prices. The pecuniary value of his work cannot, therefore, as a rule, be tested by what some other artist may think of it as a work of art. An opinion may be pertinent concerning its character as a good painting or a poor one; but where a picture is not meant for sale, and would not be readily marketable, its salable value is no test of what the artist earned in painting it. Plaintiff had set up his business at Muskegon, and had dealt with defendant for other pictures. If no fixed

price was agreed on for the one in controversy, defendant, if to pay for it what it would be reasonably worth, could not be supposed to contemplate any price not in fair proportion to what was to be paid for the other pictures, or the usual work of this particular artist. The fashionable painters referred to in the record may or may not be more accomplished than plaintiff, but in such a controversy as this he must be judged by his surroundings, and claim no more for his earnings than he is entitled to expect from what he has given reason to believe he would demand.

The court did not instruct the jury that anything less was to be allowed than if the picture had been actually delivered with its frame. There was a conflict of testimony concerning this frame, and defendant's liability for it. There was no evidence that it was worth any less to plaintiff than he paid for it. Defendant could not, at any rate, be compelled to pay more than the difference between the cost of the frame and what it would be worth to plaintiff if left on his hands. Neither can it be assumed judicially that the picture is a total loss, and is not worth something.

We do not think the jury had any right to consider, or any means of judging, the value of plaintiff's work by the expense, time, or character of his studies, and there was no testimony indicating that he had reached exceptional distinction. The jury knew nothing of him beyond his local experience and standing. Whatever may be his claims to eminence, he was not apparently engaged, so far as outward appearances went, in the higher walks of art. The pictures he made or was to make for defendant were substantially copies from photographs, and not independent original portraits, involving the labor or imagination of an original artist. But while an artist's success and his capacity to make large earnings may be due to his thorough training, yet his work and its pecuniary value cannot be determined by any such standard. There was nothing in the testimony which would

have enabled the jury or any one else to determine what toil or time or money it cost plaintiff to make him an artist, or how much they contributed to his earning. Pictures are not valued for what it cost the artist to prepare himself. A man may go through a long course of preparation, and be a very poor artist notwithstanding. And a good artist may find it convenient to do cheap work; and, if he does so, he cannot expect to be paid a higher price because he might have done better. This whole subject, even if there had been evidence on the matter, would be irrelevant, unless possibly on the probabilities of plaintiff's capacity to judge of pictures.

The judgment must be reversed, with costs, and a new trial granted.

The other Justices concurred.