A. W. SCHLOSS and Another v. SIGMUND Y. JOSEPHS and Another.[1]

July 6, 1906.

Nos. 14,839—(180).

**Verbal Contract—Measure of Damages.**

Appellants gave an order to respondents for certain suits of clothing, to be made according to stipulated sizes, material, and styles, and to be delivered within a specified time. *Held*, the contract was not within the statute of frauds, and the measure of damages was the difference between the contract price and the cost of manufacture, including material, labor, etc., for the entire order, and in addition thereto the difference between the cost of manufacturing that part of the order which was filled and shipped, less the value of the goods so manufactured and tendered at the date of their rejection by the vendee.

**Evidence.**

The evidence upon the question of damages was not sufficient to support the verdict.

Action in the district court for St. Louis county to recover $300 for breach of contract. The case was tried before Ensign, J., and a jury, which rendered a verdict in favor of plaintiffs for the sum demanded. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendants appealed. Reversed and new trial granted.

*Warner E. Whipple,* for appellants.
*Reynolds & McClearn,* for respondents.

LEWIS, J.

Respondents are manufacturing clothiers at Detroit, Michigan, and appellants were retail clothing merchants at Duluth, Minnesota. In November, 1904, appellants placed an order with the house through a representative at Duluth for sixty four suits of clothing, to be made to order according to material and style selected from samples and models exhibited by the agent; the sizes varying from thirty two to forty, and at prices from $6.50 to $12.50 per suit, the same to be manufac-

[1] Reported in 108 N. W. 474.

tured and delivered to appellants on or about March 1, 1905. The entire order amounted to $630. About March 1, 1905, respondents shipped to appellants clothing amounting to $426.50, which were refused on the ground that the order had been given conditionally only, and that they had never authorized the same to be manufactured and shipped. The balance of the order was not filled. Respondents sued to recover damages for appellants' failure to comply with the contract, and obtained a verdict of $304.90.

It being conceded there was no note or memorandum of the contract, and that the vendee did not accept or receive any part of the goods, and that no part of the purchase money was paid, the court instructed the jury that if the contract was merely for the sale of ordinary clothing, suitable in sizes, character, and quality for the general trade, then it was within the statute of frauds; but if they should find that respondents contracted to furnish material, labor, and skill, and make up the clothing in compliance with the contract, and shipped a portion thereof within the time required by the contract, and appellants refused to receive the same, then the contract was not within the statute of frauds, and respondents would be entitled to recover damages. The correctness of this instruction is challenged by appellants.

A verbal contract for the manufacture of articles according to certain specifications furnished, or a model selected, and which are not suitable for the general trade, and which would not have been otherwise manufactured, is not within the statute of frauds. R. L. 1905, § 3484. A similar rule was applied in Brown & Haywood Co. v. Wunder, 64 Minn. 450, 67 N. W. 357, 32 L. R. A. 593, where the contract was to furnish double-strength plate glass, etc., according to certain plans and specifications, and it was shown that, although glass of the quality required was carried in stock, it was not of the particular design and shape required. See also Meincke v. Falk, 55 Wis. 427, 13 N. W. 545, 42 Am. 722, where the contract was to manufacture a family carriage at a price not to exceed $900. The court laid some stress upon the fact that without the special contract the carriage would never have been manufactured in that particular manner, form, and condition, although when completed it was an article of merchandise apparently similar to others carried in stock.

The case under consideration is not precisely similar to those

cited, but the principle is the same. At least it does not conclusively appear from the evidence that the clothing ordered in this case was of such standard and uniform varieties as could be disposed of in the open market, and if there was any dispute about it the court did not commit error in taking the opinion of the jury upon the question of whether the contract amounted to a sale of clothing such as ordinarily made by manufacturers and wholesale houses and purchased and dealt in by retail dealers, or whether the contract was for the manufacture of clothing of such peculiar pattern and material as would not in the general course of trade have been otherwise manufactured.

2. On the question of damages we have more difficulty. Respondent Albert Schloss testified that the cost of the material for the entire order was $335.40, and the cost of labor $105.60, making a total of $441, and that if the contract had been carried out and the bill paid the profit would have been $189; and when asked what the goods could then be sold for, meaning at the time the testimony was taken, replied, that they would not bring over sixty five cents on the dollar of the original price. Later on he testified that the order was filled to the amount of $426.50, and stated on cross-examination that if they received the goods back the loss would be $189, and again, on cross-examination, stated that the total damages, if they got the goods back, would be $189, and, when asked the present value of the goods shipped, said it was $287.22. Again, on redirect examination, he stated as follows:

> Q. You stated on direct and cross-examination that your total loss on these goods was about $189. A. Yes, sir. Q. Did you or did you not figure in that amount the profit you could have made if the suits had been taken and paid for at that time? A. That was only the loss. Q. Then, in addition to that loss, can you figure that, if these goods had been accepted and paid for at the proper time, there would have been any profit? A. Yes, sir; there would have been a good profit in the sale. Q. Figuring the profit and dead loss on the goods, what is your total loss by reason of the failure of this sale? A. Our total loss and profit on this sale amounts to $346.50. Of course, that means that even if we get the consignment of goods that we shipped to them on March 1.

Upon the question of damages the court instructed the jury as follows:

> And I instruct you that the damages that the plaintiffs are entitled to recover are such profits as would have accrued to them from the contract as the direct result of its fulfilment. These profits are determined by showing the difference between the contract price to be paid plaintiffs and what it would have cost plaintiffs to have performed. The evidence shows that $426 worth of these goods were sent to the defendants, and they refused to receive them, and so far as we know they are in the warehouse here. I don't know what became of them. The plaintiffs should have reclaimed them, and they claimed there would be a loss on these goods when they came to sell them, and they are entitled to that loss, if any. And they are entitled to recover the difference between the value of the work. labor, services, and material that went into the contract would have been worth, if defendants had performed on their part, and what the value of those materials, work, labor, and services as represented by the clothing shipped to the defendants because of the breach of said contract by the defendants, at the time of the breach of the contract. These two elements of damages you are to consider and to determine from the evidence.

The effect of this instruction was that in any event respondents were entitled to recover the profits that would have accrued had the entire order been manufactured, delivered, and paid for, and in addition thereto were entitled to such other damages as accrued by reason of the breach of the contract; that, because of the conduct of appellants in refusing to accept the goods sent them, respondents found themselves with that clothing on their hands to do with as they might see fit, the goods being in the railroad warehouse at Duluth, subject to their control, having been notified of their rejection. Respondents might have gone into the market at that time and disposed of the suits, or, if they did not desire to do that, they were required to account to appellants upon the trial for their market value as of the date of the rejectment, and the loss, if any, would be the difference between

the cost of manufacturing the goods so shipped, including labor, material, etc., and their market value at the time of rejection. The instruction of the court fairly set before the jury the two elements of damages, but the evidence as to what constituted the profits on their order, if it had been filled and accepted, and the loss upon the shipment made, is so indefinite as to make it impossible to determine upon what basis the jury arrived at the verdict. No other evidence was received, except that above stated.

If the total cost of manufacture of the entire order was $441, had it been filled, then the difference between such cost and the contract price would be the profit, viz., $189; but, as above stated, one of the respondents testified that $189 represented the dead loss on the shipment, and did not refer to profits at all, and in another place that it represented the profits. Again, if the order shipped amounted to $426.-50, and the loss on it was thirty five per cent. the value of the manufactured goods at the time the testimony was given was $149.32. If the total actual loss was $346.50, then the profit on the whole order was the difference between this amount and the dead loss. We are unable to discover upon what basis respondents figured their profits on the entire order, had it been filled, and their loss upon that portion of the order which they had manufactured and shipped. The figures given do not check up correctly, and leave the whole matter in such a degree of uncertainty as not to justify the conclusion of the jury as to the amount of damages. Further, there was no evidence as to the value of the goods at the time of their rejection, except the statement of respondents that the goods were not salable, being ordered for a special purpose, and that if they had placed the goods in their stock immediately upon rejection they could not have found a ready market for the same; that the spring season was over by April 1, and that there was just as much of a loss at the time of the rejection as there would have been at the time the witness was testifying, some six months later.

It does not follow that, because the contract was not within the statute of frauds, the articles manufactured under the order did not have some value, and, the goods being under the control of respondents, the burden of proof was upon them to show what it was. The evidence tends to show that the shipment was made and the goods rejected on or about March 1, 1904, and inasmuch as respondents made no

effort whatever to recall the goods, or to dispose of them at that time for the coming spring and summer trade, the evidence as to the loss was not sufficient to justify the verdict.

Respondents requested the court to charge the jury as follows:

> You are instructed that if you believe that any witness has testified falsely you may disregard his testimony altogether.

This request is marked "Given." In the general charge the subject was covered as follows:

> If the jury believe from the evidence that any witness has wilfully sworn falsely on this trial to any matter or thing material to the issues of the case, then the jury are at liberty to disregard their entire testimony, except so far as it has been corroborated by other creditable witnesses or by facts and circumstances proved on the trial; and in such case you are still the sole and exclusive judges of the creditability of the witnesses and the credit that you will give to their testimony.

The request was incorrect. State v. Henderson, 72 Minn. 74, 74 N. W. 1014.. But the subject was correctly covered in the charge. Appellants insist that, both propositions having been given, the jury were in uncertainty as to which rule should be applied in testing the creditability of witnesses, and that it was reversible error. Attorneys for respondents state in their brief that the request marked "Given" was not in fact read to the jury. If that is true, then the return to this court is incorrect. In view of a new trial, we have thought best to call attention to the state of the record in this regard.

Order reversed and new trial granted.