*In re* GIES' ESTATE.[1]

BAUSCHER *v.* GIES.

1. SALES—OFFER AND ACCEPTANCE—STATUTE OF FRAUDS—QUESTIONS OF LAW AND FACT.

On the trial of a claim against the estate of decedent, for dishes ordered in his lifetime, to be decorated by claimant for him with the initials of deceased, so as to render them unfit for the general market, wherein it appeared that claimant had performed the work, and offered the dishes to the executrix by a letter addressed to the deceased a few days after his death, and received thereafter by such executrix, the question of sufficiency of the acceptance by the manufacturer to effect a valid contract is for the jury.

2. SAME—STATUTE OF FRAUDS—WORK AND LABOR—CONTRACTS.

Following the rule adopted by the courts of Massachusetts, the contract, being for an article especially designed for the decedent, not of a kind usually kept for sale by the producer, is a contract for work and labor primarily, and is not subject to the statute of frauds.[2]

Error to Wayne; Murfin, J. Submitted February 24, 1910. (Docket No. 77.) Decided March 19, 1910.

Bauscher Bros., Limited, presented a claim against the estate of Edward G. Gies, deceased, for the amount of an order for certain goods. The claim was allowed by the commissioners, and Sylvia M. Gies, executrix, appealed to the circuit court. A judgment for defendant on a verdict directed by the court is reviewed by claimant on writ of error. Reversed.

*Choate & Webster*, for appellant.

*Graves, Hatch & Wasey*, for appellee.

[1] Rehearing denied May 7, 1910.

[2] Statute of frauds, as to distinction between sales of personalty and agreements for work and labor, see note to *Flynn* v. *Dougherty* (Cal.), 14 L. R. A. 230.

STONE, J. The claimant and appellant is a German corporation, engaged in the manufacture and importation of crockery and china ware. Edward G. Gies, whose estate it is sought to charge herein, in his lifetime conducted a saloon and restaurant in connection therewith in the city of Detroit. On June 8, 1907, one Albert Debicke, an agent for Bauscher Bros., Limited, saw and obtained from Edward G. Gies his written order for dishes bearing his signature. The order provided that the dishes were to be in Detroit on or before September 25, 1907. This written order was sent on to Bauscher Bros., Limited, and the dishes were manufactured, and, appellant claims, according to the terms of the order. On July 18, 1907, Debicke addressed a registered letter to Edward G. Gies, asking for shipping instructions for the dishes in question. Mr. Gies died July 12, 1907. The letter came into the hands of Sylvia M. Gies, widow and executrix of the will of Edward G. Gies, and was receipted for by her and taken to her attorney. Claimant was notified not to ship the dishes. It was admitted at the trial in the circuit court that the goods called for by the order were in existence, and were, on the terms of the contract, sought to be delivered to the executrix, who declined to accept delivery. It appears that about the middle of May, 1908, the dishes were shipped by claimant to New York, where they were stored and insured, and were and are there still, held subject to the order of the estate. The claim was proved before the commissioners on claims of the estate, and allowed. The estate appealed to the circuit court, and the matter came on for trial before a jury. The order in question was introduced in evidence. The circuit judge, after ruling against the appellee upon the questions of the measure of damages, and the acceptance of the order by the claimant, directed a verdict in favor of the estate, upon the ground that the contract was within the statute of frauds (section 9516, 3 Comp. Laws).

The appellant assigned error upon the charge, and the case is here for review. It is claimed by appellant that

there were upwards of 6,000 pieces of the dishes. One of the dishes was produced at the argument in this court. There was evidence showing that the dishes were made of china plate. The clay is found in Germany and France. A few of the dishes were in stock, and the others were manufactured on the order. The order called for decoration, and black and luster lines with monogram "E. G. G." in black upon each dish. That part of the order called for work to be done to suit Mr. Gies' particular purpose and use.

The appellant claims and we think that the evidence fairly supports the claim:

"(1) That the decoration with black and luster lines and the monogram is done by a good artist.

"(2) That this decoration and monogram are to be upon each and every dish.

"(3) That the design varies in size with the size and kind of the dish, and that there are as many designs as there sizes and kinds of dishes.

"(4) That the design is worked out in an exact and artistic manner.

"(5) That after the design has been put on the dish, it is again burned with 1,200 degrees of heat to turn the design in and through the glazing.

"(6) That the cost of putting on the monogram alone is 40 per cent. of the price of the dish.

" In other words, the cost of putting on the monogram and lines is more than 60 per cent. of the price of the dish on the other side. An illustration will make this plain. If the price of the dish on the other side of the Atlantic was $1—the duty is 60 per cent. of the import price—this would make the price of the dish in New York $1.60. The cost of putting on the monogram and lines is 40 per cent. of the price of the dish here, which would be 40 per cent. of $1.60, or 64 cents. The duty being 60 per cent. of the import price, or $1, is 60 cents added to the 64 cents makes $1.24. This substracted from the total of $1.60, leaves 36 cents, cost of the dish in plain white, 64 cents the cost of the work and labor to put on the monogram and lines, and 60 cents the duty. This bears out the statement of the court below, and the circuit judge understood this, for he says in his opinion:

" 'Of the purchase price involved in this case, a substantial amount is represented by the duty paid by the vendor upon bringing the goods in question into the United States. *Even a larger amount* is made up of the cost of the orange and black bands and the monogram; the value of the dishes themselves, before being decorated or imported, representing considerably less than half the total purchase price represented by the order.' "

It also appeared that the monogram could not be removed without showing a scorch underneath, and impairing the value of the dish.

It is the claim of the appellee that the judgment of the court below is correct, even if the statute of frauds does not control the case, and it is urged that, upon the question of acceptance, the appellant had no standing in court. The circuit judge, in his opinion upon the motion for a new trial, disposed of that question as follows:

"It is stated that there is no evidence of an acceptance of the order on behalf of the claimant. The fact that the order was filled, and nothing remained to be done except deliver the goods, and delivery was prevented through the executrix, completely disposes of that proposition. There can be no question but that there was an acceptance of this order, but there can also be no question, nor is it controverted, that this acceptance was never in writing."

We think that the order signed by Mr. Gies may be held to have been a continuing order to the time of his death. It may be well said that the claimant acted on the faith of the order, and that the conduct of the claimant was such that it may be said to be evidence of an acceptance of the order. *Goodspeed* v. *Wiard Plow Co.*, 45 Mich. 322 (7 N. W. 902). Ordinarily the question of acceptance is one of fact for the jury. It at least would have been a proper question of fact for the jury, resting as it did upon the conduct of the parties. If this order by acceptance became a binding contract, it was binding on the estate of Mr. Gies.

The circuit judge disposed of the case upon the statute of frauds, and held that it was a sale of goods and chat-

tels, and within the terms of the statute. The opinion of the circuit judge and the briefs of counsel for the respective parties abound with much learning and many authorities upon the subject. We cannot discuss all of the authorities cited. It is the claim of the appellant that the statute of frauds does not apply in this case.

The interpretation of the statutory words, "contract for the sale of goods," etc., has led to the adoption of various rules in different jurisdictions whereby to distinguish contracts for sale from contracts for manufacture. By what may be termed the Massachusetts rule, an agreement by one to construct an article, especially for or according to the plans of another, whether at an agreed price or not, although the transaction is to result in a sale of the article, is a contract for work and labor, and not within the statute. The prevailing view throughout the United States accords substantially with the Massachusetts rule. According to what may be termed the New York rule, where the substance of the contract is work and labor to be done in converting raw materials into a new and totally different article, although the transaction is to result in a sale, the contract is not within the statute, but if at the time of the agreement the article sold substantially exists in its ultimate form, or is to be procured in substantially its ultimate form from others, even though acts remain to be done in finishing it, the agreement is a contract for sale, and within the statute. Certain States have construed the statute by reference to the English cases, or by adopting portions of the Massachusetts or New York rules, without adhering exclusively to either. Among such States are Alabama, Minnesota, New Jersey, Oregon, and Wisconsin. Some jurisdictions adopt the rule that, where the contract primarily contemplates work and labor to be done upon the goods to be sold, so as to make work and labor the essential consideration, the contract is not within the statute. Of these States are Missouri, New Hampshire, South Carolina, Washington, and Wyoming. 20 Cyc. p. 241, *et seq.*, and cases cited.

A leading case in Massachusetts is that of *Goddard* v. *Binney*, 115 Mass. 450 (15 Am. Rep. 112). In that case A. agreed to build a buggy for B., and to deliver it at a certain time. B. gave directions as to the style and finish of the buggy, and it was built in compliance with his directions, and marked with his monogram. Before the buggy was finished, B. called to see it, and, in response to an inquiry of A., asking if he might sell the buggy, replied that he would keep it; when the buggy was finished, A. notified B., and sent him a bill for it. B. returned the bill, and promised " to see " A " about it." The buggy was afterwards destroyed by fire while in A.'s possession. *Held*, in a suit by A. for the price, that the agreement was not a contract of sale within the statute. , We quote at length from that opinion:

" Whether an agreement like that described in this report should be considered as a contract for the sale of goods within the meaning of the statute of frauds, or a contract for labor, services, and materials, and therefore not within that statute, is a question upon which there is a conflict of authority. According to a long course of decisions in New York, and in some other States of the Union, an agreement for the sale of any commodity not in existence at the time, but which the vendor is to manufacture or put in a condition to be delivered (such as flour from wheat not yet ground, or nails to be made from iron in the vendor's hands), is not a contract of sale within the meaning of the statute. *Crookshank* v. *Burrell*, 18 Johns. (N. Y.) 58 (9 Am. Dec. 187); *Sewall* v. *Fitch*, 8 Cow. (N. Y.) 215; *Robertson* v. *Vaughn*, 5 Sandf. (N. Y.) 1; *Downs* v. *Ross*, 23 Wend. (N. Y.) 270; *Eichelberger* v. *McCauley*, 5 Har. & J. (Md.) 213 (9 Am. Dec. 514). In England, on the other hand, the tendency of the recent decisions is to treat all contracts of such a kind intended to result in a sale, as substantially contracts for the sale of chattels; and the decision in *Lee* v. *Griffin*, 1 B. & S. 272, goes so far as to hold that a contract to make and fit a set of artificial teeth for a patient is essentially a contract for the sale of goods, and therefore is subject to the provisions of the statute. See *Maberley* v. *Sheppard*, 10 Bing. 99; *Howe* v. *Palmer*, 3 B. & Ald. 321; *Baldey* v. *Parker*, 2 B. & C. 37; *Atkinson* v. *Bell*, 8 B. & C. 277.

"In this Commonwealth a rule avoiding both of these extremes was established in *Mixer* v. *Howarth*, 21 Pick. (Mass.) 205 (32 Am. Dec. 256), and has been recognized and affirmed in repeated decisions of more recent date. The effect of these decisions we understand to be this, namely: That a contract for the sale of articles then existing, or such as the vendor in the ordinary course of his business manufactures or procures for the general market, whether on hand at the time or not, is a contract for the sale of goods, to which the statute applies. But, on the other hand, if the goods are to be manufactured especially for the purchaser and upon his special order, and not for the general market, the case is not within the statute. *Spencer* v. *Cone*, 1 Metc. (Mass.) 283.

" 'The distinction,' says Chief Justice Shaw, in *Lamb* v. *Crafts*, 12 Metc. (Mass.) 353, 'we believe is now well understood. When a person stipulates for the future sale of articles which he is habitually making, and which, at the time, are not made or finished, it is essentially a contract of sale, and not a contract for labor; otherwise, when the article is made pursuant to the agreement.'

"In *Gardner* v. *Joy*, 9 Metc. (Mass.) 177, a contract to buy a certain number of boxes of candles at a fixed rate per pound, which the vendor said he would manufacture and deliver in about three months, was held to be a contract of sale and within the statute. To the same general effect are *Waterman* v. *Meigs*, 4 Cush. (Mass.) 497, and *Clark* v. *Nichols*, 107 Mass. 547. It is true that in 'the infinitely various shades of different contracts' there is some practical difficulty in disposing of the questions that arise under that section of the statute. General Stat. [1860] chap. 105, § 5. But we see no ground for holding that there is any uncertainty in the rule itself. On the contrary, its correctness and justice are clearly implied or expressly affirmed in all of our decisions upon the subject-matter. It is proper to say also that the present case is a much stronger one than *Mixer* v. *Howarth*. In this case the carriage was not only built for the defendant, but in conformity in some respects with his directions, and at his request was marked with his initials. It was neither intended nor adapted for the general market. As we are by no means prepared to overrule the decision in that case, we must therefore hold that the statute of frauds does not apply to the contract which the plaintiff is seeking to enforce in this action."

An instructive case is *Roubicek & Zobel* v. *Haddad*, 67 N. J. Law, 522 (51 Atl. 938). The contract was a New York contract, and the rule in that State was applied. A defendant, who was doing a retail trade in Atlantic City, N. J., ordered from the plaintiffs, who were importers and manufacturers of Bohemian glass novelties, etc., in New York City, an assortment of watchcases and cologne articles, to be thereafter manufactured in Europe, with the words "Atlantic City" thereon, for the special use of defendant's trade, and it was held, following the decisions of the State of New York, that this was not a contract of sale, but for work, labor, and materials, and hence not a contract within the statute. After stating the New York rule, the court said:

" It should be stated, however, that the courts of the State of New York have more recently shown a disposition to qualify the rule thus stated to some extent, and to make it conform more closely to the rule as adopted in the later English and American cases. Thus in *Passaic Manfg. Co.* v. *Hoffman*, 3 Daly (N. Y.), 495, it is held that if the article to be manufactured to fill the order under the contract was one that was manufactured and supplied to the trade generally, it would be a sale within the statute; but, if it was specially manufactured for the trade of the person ordering it, then the contract would be one for work and labor, and not within the statute. So in *Donnell* v. *Hearn*, 12 Daly (N. Y.), 230, it was held that an agreement to manufacture lamps, which were not usually kept in stock, nor usually manufactured for the purposes of sale, is not within the statute."

*Meincke* v. *Fall*, 55 Wis. 427 (13 N. W. 545, 42 Am. Rep. 722), is an able case, and reviews the authorities, both English and American. It was an action to recover the cost of a certain carriage manufactured by the plaintiff, and alleged to have been ordered by the defendant. It was claimed that the skill, labor, and workmanship of the plaintiff was the special inducement for giving the order. The case holds that, while an executory contract for the sale of an article for the price of $50 or more may be within the statute of frauds, notwithstanding such arti-

cle does not at the time exist *in solido*, yet where such contract is to furnish materials and manufacture the article according to specifications furnished, or a model selected, and where without the special contract the thing would never have been manufactured in the particular manner, shape, or condition it was, then the contract is essentially for special skill, labor, or workmanship, and is not within the statute. This case is cited with approval in the late case of *Gross* v. *Heckert*, 120 Wis. 314 (97 N. W. 952).

A recent case in Arkansas is *Moore* v. *Granite Works*, 80 Ark. 274 (96 S. W. 1063, 117 Am. St. Rep. 87, 10 Am. & Eng. Ann. Cas. 308). It was there held that a contract by the plaintiff, who operated a marble yard, to make a tombstone according to a design selected by the buyer from the seller's catalogue, and to place a suitable inscription on the tombstone, is not within the statute of frauds, as it is not a contract for the sale of goods, wares, or merchandise, but is one for work and labor to be done, and material to be furnished, though the transaction is to result in a sale of the completed article. See, also, *Mead* v. *Case*, 33 Barb. (N. Y.) 202.

As we have already shown, the Massachusetts rule has been adopted by a majority of the American courts. We understand that rule, in substance, to be that an agreement by one to construct an article especially for, or according to the plans of, another, whether at an agreed price or not, although the transaction is to result in a sale of the article, is a contract for work and labor, and not within the statute; but, if the article to be made and delivered is of a kind which the producer usually has for sale in the course of his business, it is a contract for sale, and must be in writing.

It must be conceded, we think, that the articles in this case—the dishes—when made according to the order, would not be fit for the general market, but were intended to suit the special use of Mr. Gies in his particular trade. They were not, in their finished condition, suit-

able to be kept in stock by the claimant, and were plainly unsuitable for the general traffic. The goods would never have been manufactured in the particular manner, shape, style, or condition but for the order. These are some of the considerations which induce us to hold that, under any of the American rules, and especially under the Massachusetts rule, which we are inclined to follow, the learned circuit judge erred in directing a verdict and judgment against the claimant.

The only case decided in this court which is directly in point is that of *Turner* v. *Mason*, 65 Mich. 662 (32 N. W. 846). It involved a contract for the painting of a portrait, and is an extreme case.

In *Underfeed Stoker Co.* v. *Detroit Salt Co.*, 135 Mich. 431 (97 N. W. 959), it was held that an agreement to furnish and install stokers, and connect them with machinery belonging to defendant, and which, when connected, would become a part of the fixtures already on defendant's premises, is not a sale of goods within the statute of frauds, and Benjamin on Sales (7th Ed.), p. 109, is quoted. The test as to whether the value of the work exceeds that of the materials used in the execution of the contract is no longer accepted either in English or American jurisdictions. *Lee* v. *Griffin*, 1 B. & S. 272; *Mead* v. *Case*, supra.

Appellant claims, and with some force, that the circuit judge should have left it to the jury to decide whether the contract was essentially a contract for work and labor, or a contract for the sale of chattels, and whether or not the goods existed *in solido* at the time the order was given; that these were clearly questions of fact to be determined from the evidence by the jury under proper instructions from the court, citing 29 Am. & Eng. Enc. Law (2d Ed.), p. 967; *Pitkin* v. *Noyes*, 48 N. H. 294 (97 Am. Dec. 615, 2 Am. Rep. 218); *Puget Sound Machinery Depot* v. *Rigby*, 13 Wash. 264 (43 Pac. 39); *Schloss* v. *Josephs*, 98 Minn. 442 (108 N. W. 474). It may be doubted

whether the facts were enough in dispute to have required this course.

For the error pointed out, the judgment below is reversed, and a new trial ordered.

MONTGOMERY, C. J., and OSTRANDER, HOOKER, and BLAIR, JJ., concurred.