Phyllis CHAPLIN, on behalf of herself and all others similarly situated; et al., Plaintiffs,

v.

CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., et al., Defendants.

No. 79 Civ. 730(MEL).

United States District Court, S. D. New York.

May 5, 1982.

John E. Kirklin, Director of Litigation, The Legal Aid Society, New York City (James C. Francis, IV, New York City, of counsel), Morton B. Dicker, Attorney-in-Charge, The Legal Aid Society, New York City (Andrea Popik, New York City, of counsel), for plaintiffs.

Ernest J. Williams, New York City (Sheila S. Rosenrauch, New York City, of counsel), for defendants.

LASKER, District Judge.

The Epilepsy Foundation of America and Phyllis Chaplin, individually and as a representative of a proposed class, brought this action against Consolidated Edison Company of New York, Inc. ("Con Ed") and certain of its officials and physicians alleging that Con Ed discriminated against epileptics in violation of Sections 503 and 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 793, 794. In 1979, Con Ed moved to dismiss the action on the grounds that Section 503 did not provide a private cause of action. The motion was denied on January 18, 1980, 482 F.Supp. 1165.

In August, 1981, Con Ed's counsel sent to plaintiff's attorney a copy of a settlement proposal which had been approved by Con Ed. (Affidavit of Sheila Solomon Rosenrauch submitted in opposition to the motion, ("Rosenrauch Affidavit") ¶ 9). Plaintiffs' counsel wrote to defendants' attorney, stating that plaintiffs had "a series of objections to the proposed settlement." (Letter of James C. Francis, dated September 10, 1981, Exhibit A to Rosenrauch Affidavit). In reply, defendants' counsel stated in a letter of September 16, 1981:

"We are still willing to finalize the agreement as it presently stands, thereby resolving this matter. Any further negotiation is an impossibility; and if this agreement is not satisfactory to your client in its present form, then I must withdraw all offers of settlement..."

(Letter of Sheila Solomon Rosenrauch, Exhibit B to Rosenrauch Affidavit).

Plaintiffs' attorney answered in a letter of September 17, 1981, which said:

"Based on my previous communications with my clients, I believed that I could convince them to accept the proferred terms. Unfortunately, that was not the case. After careful consideration they presented objections which have substantial merit."

(Letter of James C. Francis, Exhibit C to Rosenrauch Affidavit).

The settlement climate changed abruptly that day when the Second Circuit announced its decision in *Davis v. United Air Lines*, 662 F.2d 120, holding that Section 503 of the Rehabilitation Act did *not* create a private cause of action.

On September 30th, plaintiffs' attorney informed defendants' counsel by letter that plaintiffs had had "a change of heart" and decided to accept the offer. (Letter of James C. Francis, Exhibit E to Rosenrauch Affidavit). Defendants' counsel replied by telephone that the settlement was no longer acceptable.

Plaintiffs move to enjoin Con Ed to execute the Consent Agreement and, if the agreement is approved by the Court, to abide by it. They contend that the Rosenrauch letter of September 16th constituted an offer, which they accepted by the "change of heart" letter of September 30th. In essence, plaintiffs argue that Con Ed entered into a contract to settle the case, and that the Court should grant specific performance.

In answer, Con Ed focuses on plaintiffs' counsel's letter of September 17th, which, it argues, was a rejection of Con Ed's offer. It follows, according to Con Ed, that there was no offer remaining to be accepted at the time of plaintiffs' letter of September 30th.

Plaintiffs reply that their attorney's letter of September 17th was not a rejection, but only a statement that no agreement had yet been reached.

The inquiry turns upon a careful reading of the letters of September 16th and 17th. In her letter of September 16th, Con Ed's lawyer stated that the offer was still open. However, she emphatically limited the offer: "if this agreement is not satisfactory to your client in its present form, then I must withdraw all offers of settlement." Con Ed's position was explicit: take it or leave it. Plaintiffs' counsel wrote in reply that he could not convince his clients "to accept the proffered terms." While it is true that the letter does not reject the possibility of arriving at *some* settlement, it does reject the settlement proposed by Con Ed. The offer, as noted above, had been limited to the precise terms proffered and a rejection of those terms could only be a rejection of the offer. Reading the two letters together, we can only conclude that the September 17th letter was a rejection of Con Ed's offer.

■■■ An offer is extinguished upon rejection. *Tradeways Inc. v. Chrysler Corp.*, 342 F.2d 350, 354 (2d Cir. 1965) *cert. denied*, 382 U.S. 832, 86 S.Ct. 71, 15 L.Ed.2d 75 ("A communicated rejection of an offer causes it to become a nullity."). Thus, at the time of plaintiffs' purported acceptance, no offer existed.

Accordingly, the motion to enjoin defendants to execute the Consent Agreement is denied.

It is so ordered.