BROWN & HAYWOOD COMPANY v. JOHN WUNDER.[1]

May 20, 1896.

Nos. 9913—(171).

Statute of Frauds—Contract for Sale of Goods.

A verbal contract for the manufacture of articles of special and peculiar design, not suitable for the general trade, and for the price of more than $50, is not a contract for the sale of goods and chattels, within the statute of frauds. G. S. 1894, § 4210.

[1] Reported in 67 N. W. 357.

### Same—Contract for Improvements on Land.

A verbal contract to furnish material, and, after performing labor thereon, attach it to the realty, as a part of a building in the course of construction, is not a sale of goods or chattels, and is not within said statute.

Appeal by defendant from an order of the district court for Hennepin county, Jamison, J., denying a motion for a new trial. Affirmed.

*E. C. Garrigues* and *J. B. Atwater*, for appellant.

Where a contract is intended to result in the transferring for a price from B to A a chattel in which A had no previous property, it is a contract for the sale of a chattel. Browne, St. Frauds, §§ 308, 309, 310; 1 Benjamin, Sales, §§ 108, 117; 8 Am. & Eng. Enc. Law, 704–709; Brown v. Sanborn, 21 Minn. 402; Russell v. Wisconsin, M. & P. R. Co., 39 Minn. 145, 39 N. W. 302. See, also, Hanson v. Marsh, 40 Minn. 1, 40 N. W. 841; Pratt v. Miller, 109 Mo. 78, 18 S. W. 965; Meincke v. Falk, 55 Wis. 427, 13 N. W. 545; Cooke v. Millard, 65 N. Y. 352. The case does not fall within the principle that the statute of frauds does not apply where the intention of the contract is to make improvements on real property. See Wolfenden v. Wilson, 33 Up. Can. Q. B. 442; Mead v. Case, 33 Barb. 202.

*J. H. Cook* and *F. B. Hart*, for respondent.

The contract has been taken out of the statute of frauds by part performance, where in pursuance of such agreement a party has suffered injury and loss. Brown v. Hoag, 35 Minn. 373, 29 N. W. 135; Pressnell v. Lundin, 44 Minn. 551, 47 N. W. 161; Herrick v. Newell, 49 Minn. 198, 51 N. W. 819. The contract was not for the sale of goods and chattels. Phipps v. McFarlane, 3 Minn. 61 (109). If the article is to be manufactured upon a certain plan or model furnished, and without the particular contract the article would never have been manufactured in the particular manner, shape or condition required by the contract, the statute of frauds does not apply. Hight v. Ripley, 19 Me. 137; Meincke v. Falk, 55 Wis. 427, 13 N. W. 545; Mixer v. Howarth, 21 Pick. 205; Goddard v. Binney, 115 Mass. 450; Sawyer v. Ware, 36 Ala. 675; Atwater v. Hough, 29 Conn. 508.

A contract to make up materials and affix them to the land is not a contract for the sale of goods. Wood, St. Frauds, § 284; Benjamin, Sales, § 108; Tripp v. Armitage, 4 M. & W. 687; Clark v. Bulmer, 11 M. & W. 243.

CANTY, J. This is an action for damages for loss of plaintiff's anticipated profits, caused by the breach by defendant of an executory agreement between the parties. Defendant was about to bid for a contract to rebuild a burnt portion of a building in Minneapolis, and received from plaintiff the following proposition to furnish the glass for the same: "Minneapolis, Minn., Feb. 6th, 1894. John Wunder, Esq., City—Dear Sir: We will furnish all plate glass, double-strength glass, beveled plate set in metallic sash, and crystalline glass, as per plans and specifications, for the burnt portion of the Syndicate Block, set complete in place, for thirty-one hundred dollars. This includes glass for water closets and crystalline glass in skylights; also, mirrors around show-window posts. Yours faithfully, Brown & Haywood Co." The evidence tends to prove that defendant then and there orally promised plaintiff that, if he should be awarded the contract to reconstruct such portion of the building, and plaintiff's bid for the glass work was the lowest received by him, he would award the glass work to plaintiff; that the contract for reconstruction was so awarded him, and plaintiff's bid for the glass work was the lowest, but that he refused to permit plaintiff so to furnish the glass work, and let the furnishing of the same to others. On the trial the jury found for plaintiff in the sum of $325, and from an order denying a new trial, defendant appeals.

The only question raised on this appeal is that defendant's verbal promise to award the contract for the glass work to plaintiff is void under the statute of frauds. G. S. 1894, § 4210, provides: "Every contract for the sale of any goods, chattels or things in action for the price of fifty dollars or more, shall be void, unless— First, a note or memorandum of such contract is made, in writing, and subscribed by the parties to be charged therewith," or unless there has been a part performance. It is contended by appellant that this contract is one for the sale of goods and chattels, and therefore within the statute. We cannot so hold. In our opinion,

it appears, from the evidence, to be a contract for the manufacture of articles of special and peculiar design, not suitable for the general trade. Such a case is not within the statute. Browne, St. Frauds, §§ 304, 305, 307, 308; 1 Reed, St. Frauds, § 247; Phipps v. McFarlane, 3 Minn. 61 (109).

The testimony tends to prove that, in the usual course of business, the glass is carried in stock in sheets of standard sizes, and is cut up to fit the particular sash frames. The witness Brown testified: "Q. Now explain these bevel-plate transoms, Mr. Brown, —what they are and what you do to them. A. In those, in the case of metallic sash and beveled plate, we cut the plate to the smaller shapes; that is, I think, in this case, a triangular, or, possibly, a square. We cut them with a diamond, and send them upstairs to the beveling department, and they grind these edges over a succession of wheels resembling grindstones. Some are coarser and some are finer. They pass over two or three wheels, and, after they have been ground on those wheels, they are polished off on the ruble wheel, which gives them a final smoothing and polishing. After they are prepared in that way, then we get this metallic sash bar, and we now have a machine which cuts it off into suitable lengths to put this glass together with, and then those joints are all soldered, * * * cemented, * * * and cleaned. Q. Well, the result of that work, when it is done, is to give you a window of a certain size, made up of small pieces of glass, with the necessary rims of metal, or something of that sort? A. The metal and beveling. The beveling is the important item. * * * In regard to the item of $431 for the beveled plate, the labor in that particular item would, perhaps, be $300. In regard to the item of chipped glass of $450, the labor would, perhaps, cost from $100 to $150. We estimated the work of setting all the glass in the building to be $200. * * * The performance of the contract required us to come there and put these plates of glass in the apertures or frames that were prepared by the contractor. * * * As regards the plate glass, the sash are usually in place in the building, so that, when the glass is put in, the building is inclosed. * * * In my estimate I figured the plate glass at $671, and that included ten per cent. for cutting and waste."

Not only was this a contract to manufacture articles of a special

and peculiar design, not suitable for the general trade, but it appears from the contract that the glass was to be "set complete in place." Then it was a contract to make improvements on the land, to erect portions of a building attached to the realty, not to sell chattels. Such a contract is not within the statute. Benjamin, Sales, § 108.

This disposes of the case, and the order appealed from is affirmed.