### UNDERFEED STOKER CO. *v.* DETROIT SALT CO.

1. CONTRACTS—APPLIANCES—TESTS—EVIDENCE.

    In an action on a written contract for the installation of stokers under the boilers of defendant, providing for tests to be made of the increased economy from their use as compared with hand-fed boilers, and the first test having proved unsatisfactory by reason of an alleged erroneous registration of the water meter, evidence *held* to justify a finding that a second test was agreed to be a governing test.

2. SAME—FIXTURES—STATUTE OF FRAUDS.

    An agreement to install stokers and connect them with machinery belonging to defendant, and which, when connected, will become a part of the fixtures already on defendant's premises, is not a sale of goods, within the statute of frauds.

3. EVIDENCE—EXPERTS—STEAM POWER.

    Evidence of experts that it would be impossible for a plant, running in the ordinary way, to use up the quantity of steam shown by the meter to have been generated during a given time, is admissible, and justifies the inference that the meter could not have properly registered the quantity of water passing through it.

Error to Wayne; Hosmer, J.   Submitted October 22, 1903.   (Docket No. 64.)   Decided January 12, 1904.

*Assumpsit* by the Underfeed Stoker Company of America against the Detroit Salt Company for the price of certain appliances installed in defendant's plant. From a judgment for defendant, plaintiff brings error. Affirmed.

*Bowen, Douglas, Whiting & Murfin,* for appellant.

*William J. Gray* and *L. S. Trowbridge, Jr.,* for appellee.

Montgomery, J. This is an action to recover the price of two underfeed stokers supplied to defendant under a written contract. This contract consisted of specifications and proposal for the installation of the Improved Jones Underfeed Mechanical Stokers, and provided that the plaintiff should supply, and purchaser erect in position, two Improved Jones Underfeed Stokers, under the boilers of the Detroit Salt Company, and would also supply and erect in position two sets of dead plates made especially to suit the boilers. The contract further provided that the defendant would supply the necessary bricks, fire clay, mortar, and cement, and do all the necessary brickwork, for the installation of the stokers, and would make the necessary alterations to the fronts of the boilers for the proper installation of the stokers. The plaintiff also agreed to supply, and purchaser erect in position, one blower of sufficient capacity for the two stokers. Plaintiff also agreed to furnish the services of an expert to install the stokers. The contract also provided for tests to be made of the increased economy from the use of these stokers as compared with hand-fed boilers. These comparative tests were to be made under the terms of the contract specifically prescribed, and the stokers were to be sold upon a guaranty of an increased economy of 15 per cent.

The stokers were put in as agreed, and tests were made, which the defendant claimed were unsatisfactory, for the reason that it was claimed that the water meter did not properly register, and the defendant asked for another test.

Plaintiff offered to make a new test, but upon condition that the first test should remain the governing test. In reply to this proposition, which was by letter, the defendant wrote that it could not see, under the circumstances, any reason for making the test, and that what it expected of the plaintiff was that it should send an expert to make another test of the stoker after weighing the water, and an additional test with hand firing; that if, upon this test being made, the saving of 15 per cent. was shown, defendant would pay the expense of the test, and would accept the stokers. In response to this, plaintiff sent a Mr. Umphray to the defendant, with the purpose of having a test made, but, as its testimony tends to show, without giving him authority to make a new governing test. The defendant's testimony shows that the agreement made with Mr. Umphray was that there should be a new governing test, and the fact is that a new test was entered upon; but, while the test was being made, some of the machinery of the defendant gave out, so the test could not be completed. Plaintiff thereupon refused to postpone the test and complete it later.

The jury, in answer to a special question, found that, after the July test, the parties agreed upon a new test, which should determine whether or not the 15 per cent. increase of economy was shown, and also that in the course of this test there was an honest breakdown of the drier, not due to the bad faith or connivance of the defendant.

The defense was placed upon two grounds: *First*, that a new governing test was agreed upon; and, *second*, if no new governing test had been agreed upon, there was sufficient testimony that the first test was abortive by reason of the erroneous registration of the water meter.

Plaintiff contends, as to the first defense, that the agent, Umphray, was not authorized to make a new governing test. We think, however, that the circuit judge correctly ruled upon this question. It appears that, before Um-

135 Mich.—28.

phray came on to make the test, plaintiff had in its possession the letter of defendant declining to enter into a test except upon the condition that it should be a governing test. Umphray was furnished with a slip of paper embodying the conditions of this test, and, while he testifies that Mr. Daley, the general manager of the company, told him to be very careful and not waive the previous test in whatever he might do or say, it is very clear that Umphray's authority, as it appeared to defendant, and as it had a right to assume it to be, was much broader than this; and we agree with the circuit judge that he was clothed with apparent authority to make such new tests as the parties should see fit to agree upon.

It is further contended that this new governing test should not control for the reason that the original contract was in writing, and was such a contract as is required by law to be in writing, and for this reason could not be modified by parol. If the plaintiff's counsel are right in their premises, they are right also in their conclusion. *Barton v. Gray*, 57 Mich. 622 (24 N. W. 638). But, without passing upon the question of whether an arrangement for a new test was a modification of the written contract, we think this is not a sale of goods, within the meaning of the statute of frauds, and therefore that the original contract need not have been in writing. The agreement was an agreement to install, and connect with machinery belonging to the defendant, machines to be furnished by the plaintiff. They were to be affixed to the freehold, and become a part of the fixtures already situated upon the defendant's premises. Benj. Sales (7th Ed.), p. 109.

Error is assigned upon the admission of testimony of witnesses, of sufficient experience to make their opinion of weight, that it was impossible for a plant running in the ordinary way to use up the quantity of steam which the meter would show to have been generated during the time stated, and the jury were permitted to draw the inference from this that the meter could not have properly registered the amount of water which passed through it. We think

this testimony was competent for the purpose offered; but, more than this, as there was sufficient testimony to show a distinct agreement for a new governing test, and a departure by the plaintiff from this agreement, the result reached by the jury was the only one possible, under the finding of facts.

It is contended, however, by the plaintiff, that the great preponderance of the testimony upon this question was with the plaintiff. A motion for a new trial was made and refused, and we are asked to reverse the case for alleged error in this ruling. We are not satisfied that the preponderance of evidence is so clearly with the plaintiff on this question that we would be justified in disturbing the verdict.

Judgment will be affirmed.

The other Justices concurred.