THE FREDERICK RAFF COMPANY *vs.* JAMES J. MURPHY ET AL.

First Judicial District, Hartford, October Term, 1929.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Argued October 3d—decided November 7th, 1929.

*David A. Wilson,* for the appellants (defendants).

*William M. Harney,* for the appellee (plaintiff).

MALTBIE, J. This is an action brought to recover damages arising from the failure of the defendants to perform certain work in accordance with a bid claimed to have been submitted by them to the plaintiff and by it incorporated in a bid it made to do the plumbing and heating work in connection with a certain building to be erected by the State at one of its institutions. The appellants sought various corrections in the finding, some of which the court made in full or in a modified form and others it denied. The appellants make particular point of the refusal of the trial court to strike from the finding certain statements as to a telephone conversation preliminary to the submission of the bid by the defendants. The president of the plaintiff, Raff, testified as to this conversation, but the one of the defendants with whom he stated it took place absolutely denied it. The trial court was not compelled, as appellants claim, to choose between the bare testimony of these witnesses but that of the former might reasonably be regarded as corroborated by inferences to be drawn from the tenor and circumstances of an admitted telephone conversation on a later day when the bid was actually submitted. The other corrections now sought in the finding are immaterial in the view we take of the case or could not be justified upon the evidence, except that the trial court did add a certain statement, in granting one paragraph of the motion to correct, as to a business practice and agreement to deduct a portion of the cost of a contractor's bond from the bid of a subcontractor, which seems to have no support in the evidence. This statement we disregard.

The finding as corrected states the following facts: The plaintiff was engaged in the heating and sheet metal business. The defendants conducted a plumbing and electrical business. The State was about to award

a contract for the installation of heating and plumbing in a building to be erected as a part of one of its institutions. Raff learned of this and also that the architect preferred that the heating and plumbing work be included in a single bid. He was also informed that the defendants uniformly were low in their bids for plumbing and, desiring to secure the heating work for his company, he asked the defendants if they would be interested in submitting a figure for the plumbing work in connection with it. They agreed to submit such a bid, on condition that the plaintiff would not obtain figures from anyone else for that work and would give them the job if the plaintiff secured the contract, and these conditions were accepted by Raff. Later the defendants communicated by telephone with Raff submitting a bid for the plumbing work in the amount of $14,300, and Raff asked them, in accordance with the practice in the trade, to confirm the bid by letter, which they agreed to do, but did not, nor was there ever any written memorandum of the agreement of the defendants to do the plumbing work. The plaintiff company thereupon incorporated this bid in a combined bid covering both the heating and plumbing work and the same day, September 19th, 1927, submitted it to the officials of the State having the matter in charge. The bids were opened that afternoon and Raff, reading in a newspaper that the bid of his company had been accepted, telephoned one of the defendants of what he had read and advised him that immediately upon receipt of formal notice, he would notify them, and thereupon this defendant expressed his pleasure and appreciation. Some two days later, the defendants called at the office of the plaintiff and informed Raff that an error had been made in the bid they had submitted and that, because of it, they could not go through with their contract, but Raff told them

that, while he regretted the mistake, he had accepted the bid in good faith, had submitted it as a part of his company's bid, that his company had its business honor to maintain and would be obliged to perform its contract, and that he would expect the defendants to abide by their bid. On October 4th, 1927, the plaintiff received formal notice that the contract had been awarded to it in accordance with its bid and the next day it advised the defendants of this fact. It then mailed to them an order to install the plumbing for $14,085.50, the difference between this amount and the bid representing a deduction of the defendants' proportionate share of the bond required to be filed by the plaintiff. On October 14th the plaintiff caused the defendants to be notified that, unless they proceeded at once with the work, it would have to secure some other contractor to do it and that any sum it would have to pay in excess of the defendants' bid would be charged to them. The defendants did nothing and the plaintiff in order to perform its contract proceeded to secure another contractor to do the plumbing work in the building. It had to pay this contractor $4,200 more for the work than the bid of the defendants.

The specifications under which the plaintiff's bid was submitted called for the furnishing of a large number of articles of personal property, lavatories, sinks, and so forth, and the labor and materials necessary for installing and connecting them. They also contained a provision that the contractor would not sublet nor assign the contract or any part of it without the written consent of the engineers in charge of the building and that no subcontract should be made which the engineers could not require the contractor to terminate upon three days written notice in case of delay or failure to conform to the specifications; but no permission was ever obtained by the plaintiff to sublet the

contract for the plumbing to the defendants. The specifications also required that a certified check for one per cent of the bid price should accompany each proposal as a guaranty of good faith and, prior to the acceptance of the bid, the plaintiff could have withdrawn it by sacrificing the amount of this check; but, had it done so, it would have been guilty of a breach of business ethics and would have had the reputation of being a firm whose bids could not be relied on, to its damage if not to its destruction. The trial court gave judgment for the plaintiff to recover the difference between the amount of the defendants' bid and the amount the plaintiff actually paid to the contractor who finally did the plumbing, with interest, and the defendants have appealed.

The defendants contend that no contract ever came into existence between the parties. When the defendants submitted their bid to the plaintiff, to be incorporated by it in its joint bid for the heating and plumbing work, they made an offer to do that plumbing work for the sum named, conditioned upon the ultimate awarding of the contract to the plaintiff. When the plaintiff in the same telephone conversation, requested a confirmation of the bid by letter and when, later, having incorporated the defendants' bid in its own, it heard that the bid had been accepted and telephoned the information to the defendants and stated that upon receipt of formal notice of the award of the contract to it it would notify them, there was an acceptance of the defendants' offer and a sufficient communication of that acceptance to constitute a binding contract. In case of a bilateral contract acceptance of an offer need not be express but may be shown "by any words or acts which indicate the offeree's assent to the proposed bargain." Amer. Law Inst. Restatement, Contracts, p. 68. That both offer and acceptance

would become effectual only in the event that the plaintiff's bid was actually accepted and the contract awarded to it did not detract from the mutuality of their undertaking; [the defendants had no right to withdraw from their agreement after the plaintiff had accepted their bid, though the contract had not yet been awarded to it. 2 Williston on Contracts, § 666.] Nor did the fact that the plaintiff, in sending them the order to proceed with the work made a deduction from the amount of their bid, representing a portion of the cost of the bond it had to file, affect the rights of the parties. The contract relationship had already been created and if the plaintiff had no right to make this deduction, as upon this record we must assume it did not, the effect would be merely that it attempted an alteration in the terms of the contract ineffective because not assented to by the defendants, and the defendants could have proceeded with the work and claimed the full price agreed upon. *Barlow Brothers* v. *Lunny*, 102 Conn. 152, 128 Atl. 115; *C. and C. Electric Motor Co.* v. *D. Frisbie & Co.*, 66 Conn. 67, 94, 33 Atl. 604. The securing of the consent of the engineers in charge of the work to the making of the contract between the parties, as required by the specifications, was not made an express condition of that contract nor are facts found from which such a condition could be implied in fact. [If by reason of its inability to secure that consent the plaintiff was unable to sublet the plumbing work to the defendants it would undoubtedly have been liable to them in damages for failure to perform its agreement to give them the work.] It took the risk of being able to procure that consent, or of the State's waiving the failure to comply with this provision of the specifications. But the default of the defendants never made it necessary for the plaintiff to seek such consent or waiver. *Janulewycz* v. *Quagliano*, 88 Conn.

60, 64, 89 Atl. 897; *Tracy* v. *O'Neill,* 103 Conn. 693,699, 131 Atl. 417.

If the agreement was not invalidated by the fact that there was no such memorandum of it in writing as would comply with the statute of frauds concerning the sale of personal property, the defendants are liable for the breach of it. The contract did involve the furnishing of articles such as lavatories, sinks and the like, but what part of the bid represented these and what part represented labor and incidental materials used in setting them up does not appear. Our question then is, does a contract made to supply and install articles such as plumbing fixtures, for a single price which includes also labor and incidental materials constitute a contract to sell or a sale of goods within the terms of the statute. General Statutes, § 6131. By the express terms of the statute not every contract which results in the transfer of title to personal property is within it; thus it does not include a contract under which "the goods are to be manufactured by the seller expressly for the buyer and are not suitable for sale to others in the ordinary course of the seller's business." Such a contract as the one before us differs essentially from the ordinary contract of sale, because it involves, often to a very large extent, work and labor in addition to the furnishing of materials and, upon breach by the promisee, the contractor's remedy would not be based upon the fact that materials of a certain value were to be furnished and accepted but upon the breach of the contract as a whole. If we look to the understanding and intention of the parties, as evinced by the terms of the contract, as it is said in *Atwater* v. *Hough,* 29 Conn. 508, 513, we should do, it is at once evident that they could not have regarded the contract as one for the sale of certain articles. In that connection it is significant that, as far as the finding indicates, title to the

articles was not to pass to the State as in articles of personal property but in articles which, by the very terms of the contract, were to be affixed to and become part of the realty. Such a contract does not fall within the terms of the statute. *Underfeed Stoker Co.* v. *Detroit Salt Co.,* 135 Mich. 431, 97 N. W. 959; *Brown & Haywood Co.* v. *Wunder,* 64 Minn. 450, 453, 67 N. W. 357; *Scales* v. *Wiley,* 68 Vt. 39, 33 Atl. 771; Benjamin on Sales (6th Ed.) p. 190.

The remaining question is as to the damages. "The general rule regarding breaches of contract, whether relating to real or personal estate, is that the injured party shall recover that compensation which will leave him as well off as he would have been had the contract been fully performed." *Lee* v. *Harris,* 85 Conn. 212, 214, 82 Atl. 186. "The object of the parties ought to be attained as nearly as possible; and that is, that the specific act agreed to be done should be performed." *Wells* v. *Abernethy,* 5 Conn. 222, 227. In the instant case the defendants agreed to do the plumbing work in the building for a certain sum and the plaintiff was entitled to have that work done for that sum. The situation is practically the same as that presented where a building contractor makes default in a portion of his contract and the promisee is entitled to recover the reasonable cost of getting the work done by another. *Blakeslee* v. *Holt,* 42 Conn. 226, 229; 1 Sutherland on Damages (4th Ed.) § 91. This rule the trial court adopted. But the defendants claim that as the plaintiff might have withdrawn its bid before its acceptance by forfeiting the amount of the check it had given as a guaranty, it was obliged to minimize its damages by taking that course. It must be noted that the finding does not state the time when the bid was actually accepted; if we were at liberty to assume that it was accepted on the day when the plaintiff's presi-

dent, Raff, read that fact in the newspaper, it was too late for it to withdraw when notified of the mistake the defendants had made in determining the amount of their bid. But aside from this, the defendants' claim overlooks the fact that the bid includes not merely the plumbing work to be done by the defendants but also the heating work, which the plaintiff was to do, so that a withdrawal would have subjected it also to the loss of the profits it could make by the performance of that work. The duty of the plaintiff to keep the damages from the breach of the contract as low as reasonably possible does not require of it that it disregard its own interests or exalt above them those of the defaulting defendants. *Bridgeport* v. *Aetna Indemnity Co.*, 93 Conn. 277, 285, 105 Atl. 680. It was not under an obligation to sacrifice any substantial right of its own in order to minimize the loss of the defendants. *Hollerbach & May Contract Co.* v. *Wilkins*, 130 Ky. 51, 59, 112 S. W. 1126. It was not required to take a course that would subject it to the loss of profits on its own part of the bid and which, as the trial court has in effect found, would to a material extent adversely affect the good will of its business. *Tooke* v. *Burke*, 141 La. 746, 75 So. 668.

There is no error.

In this opinion the other judges concurred.