[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In January 1990, the plaintiff landlord and the defendant tenant entered into a written lease for certain commercial premises located in a shopping center in Guilford. The lease had a five-year term from March 1, 1990 through February 28, 1995 and required monthly payments of rent. The defendant defaulted in his obligation to pay rent beginning with the April rental payment and vacated the premises in July 1990 after the plaintiff CT Page 3245 had brought a summary process action. In this action, plaintiff seeks judgment for damages he has suffered as a result of the defendant's breach of lease.
The plaintiff claims the following items of damage:
Unpaid rent due under the lease:
Lease year 1: April, May, June and July 1990 -$ 2,976.00 August 1990 through February 1991 — 5,208.00 Lease year 2: March 1, 1991 through February 28, 1992 — 9,492.00 Lease year 3: March 1, 1992 through February 28, 1993 — 9,900.00 Lease year 4: March 1, 1993 through February 28, 1994 — 10,116.00 Lease year 5: March 1, 1994 through February 28, 1995 — 10,116.00 TOTAL RENT: $47,808.00
Late charges for 11 months: April 1990 through February 1991 — $409.20 Management fee as required under lease — $113.65 Cost of repairs and cleaning after defendant vacated — $1,179.87 Attorney's fees incurred by the landlord for the summary process action and for this action, as provided in the lease — $4,043.40 Unpaid renovation work prior to the defendant's taking occupancy, for which defendant agreed in writing to pay — $2,770.00 TOTAL CLAIMED: $56,324.12
The unpaid rent for the balance of the lease term is sought pursuant to paragraph 6 of the lease, which provides for acceleration of the entire rent for the balance of the lease term upon the tenant's default. The claim for unpaid rent for the CT Page 3246 balance of the lease term is the only item of damage which is in dispute. The defendant contends that the landlord has failed to mitigate his damages in that he has not re-rented the premises to another tenant and the landlord therefore cannot recover the unpaid rent as damages.
In an action for breach of a lease, the amount of rent agreed to by the parties is a proper measure of damages. Rokalor, Inc. v. Connecticut Eating Enterprises, Inc., 18 Conn. App. 384,389-390 (1989). The landlord is, however, under a duty to mitigate his damages by making reasonable efforts to minimize damages, including steps to relet the premises. Id. at 390. Whether the efforts are reasonable is a question of fact for the trier. Id.
The court finds that the plaintiff's efforts to relet the premises after the defendant vacated were reasonable. The plaintiff advertised daily in the New Haven Register and twice a month in the Shoreline Times beginning after the defendant vacated. The landlord placed a sign on Route 1, the busy highway where the premises are located, indicating that space was available. The plaintiff prepared a brochure and distributed it to the Shoreline Board of Realtors. (The brochure indicated the plaintiff's willingness to lease for "half price" during the first year of a multi-year lease.)
The response to all this advertising was poor because of depressed market conditions and a deteriorating economic climate. The plaintiff's witness, a licensed real estate broker, testified that small shopping centers in southern Connecticut, such as this one, are generally suffering a 50% vacancy rate. Because the response was so poor, the plaintiff discontinued the newspaper advertising in December 1990, although he continued to use the brochures and to make weekly contact with area realtors. The sign on Route 1 remains and is illuminated at night.
The defendant contends that the plaintiff's efforts to relet the premises are deficient in two respects. The defendant asserts first that the plaintiff failed to mitigate damages by ceasing all efforts to re-let the premises in January 1991. This assertion is contrary to the evidence presented and the facts found above. Although the plaintiff admitted that he stopped newspaper advertising in December 1990, the undisputed testimony was that he continued to seek a new tenant through the sign on the premises, the brochures and his contacts with realtors.
The defendant's second contention is that the landlord failed to mitigate his damages in that the premises leased to the defendant were not advertised separately from the plaintiff's other vacancies at the shopping center. The premises leased to CT Page 3247 the defendant for his use as a bakery are located at Lighthouse Square, a shopping center owned by the plaintiff which has vacancies in addition to the one caused by the defendant's breach of lease. The landlord advertised all the vacancies in ads which indicated the availability at Lighthouse Square of spaces of varying sizes. The size of the space leased to the defendant was included within the minimum and maximum sizes advertised by the landlord.
The defendant has offered no legal precedent in support of his claim that the failure to separately advertise the premises leased to the defendant constitutes a failure to mitigate damages. Moreover, such a claim is inconsistent with the nature of the landlord's duty to mitigate as described by our Supreme Court.
 The duty to mitigate damages did not require the plaintiff to sacrifice any substantial right of its own; Eastern Sportswear Co. v. S. Augstein 
Co., 141 Conn. 420, 425, 106 A.2d 476 (1954); or to exalt the interests of the tenant above its own. Id.; Raff Co. v. Murphy, 110 Conn. 234, 243, 147 A. 709 (1929). It was required to make reasonable efforts to minimize damages.
Danpar Associates v. Somersville Mills Sales Room, Inc.,182 Conn. 444, 446 (1980). The landlord's efforts in this case were reasonable.
The plaintiff is therefore entitled to the damages claimed, with one exception. The landlord cannot recover late charges as provided for in the lease for the months after the landlord terminated the lease through the service of a notice to quit. The plaintiff is entitled to late charges for April and May 1990 only, a total of $74.40. Judgment is therefore entered against the defendant for $55,989.32, plus costs.
The defendant has objected to the entry of judgment in this amount, pointing out that the landlord may re-rent the demised premises sometime prior to February 28, 1995, when the lease would have expired, thereby reducing the damages to which the landlord would otherwise be entitled. The landlord has responded with an offer that judgment should enter in the full amount with an immediate payment of all amounts which would currently be due if the lease were still in effect and monthly payments of the balance of the judgment in the same amount as provided for monthly rent in the lease. The plaintiff has further offered that the judgment should be subject to being reopened at such time as the premises are re-rented by the landlord so that the amount of the judgment can be reduced. CT Page 3248
This approach seems very reasonable to the court and clearly beneficial to the defendant. Accordingly, immediate payment of $17,156.32 is ordered, with the balance of the judgment to be paid in monthly installments, beginning in April 1991, the amount of each such installment to be equal to the monthly rental amount which would have been due under the lease for that month. It is further ordered that this judgment may be reopened on motion of either party at such time as the demised premises are re-rented, so that the judgment may be accordingly reduced.
Christine S. Vertefeuille, Judge