[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
RE: OBJECTION TO CORRECTED REPORT OF ATTORNEY TRIAL REFEREE #122
Before the court are two motions in response to the rulings of an attorney trial referee. Before turning to the facts of the case, a brief description of the procedural history is in order. The summons and complaint were filed on July 23, 1996, with a return date of August 20, 1996. The defendant filed his initial appearance on August 2, 1996, and on August 29, 1996, the defendant filed his answer and special defenses. Subsequently, in July, 1998, the parties agreed to refer this matter to an attorney trial referee pursuant to Practice Book § 19-1 et seq. The Attorney Trial Referee, Richard Kilcullen, conducted the trial over CT Page 15118 the course of several months, and on June 3, 1999, he rendered a "memorandum of decision," which was also intended to be, it appears, his report, pursuant to Practice Book § 19-8.
On June 25, 1999, the defendant filed a "motion to correct report of referee, " pursuant to Practice Book § 19-12. The plaintiff filed a "plaintiff's response to defendant's motion to correct report of report of referee" on July 11, 1999. The referee filed both his "corrected report of attorney trial referee" and "response to motion to correct report of trial referee" on May 22, 2000, almost eleven months after the defendant filed his motion to correct. In the intervening time, the Practice Book was amended, effective January 1, 2000, to simplify the procedure for objecting to, and taking exception to, the rulings of an attorney trial referee. These amendments are relevant because, following the filing of the referee's report, the defendant filed two motions. On June 1, 2000, the defendant filed "exceptions to the corrected report of committee," pursuant to the now repealed Practice Book § 19-13, and on June 2, 2000, the defendant filed "objections to acceptance of corrected report of attorney trial referee," pursuant to Practice Book § 19-14. On July 26, 2000, the plaintiff filed both a "plaintiff's response to defendant's objections to acceptance of corrected report of attorney trial referee," and a "plaintiff's response to defendant's exceptions to corrected report of attorney trial referee." Finally, on August 9, 2000. the parties appeared before this court for oral argument, and argued about both the defendant's objection to the acceptance of the corrected report and the defendant's exceptions to the report.
The essential facts of this case, as found by the referee, are as follows: "This case deals with the rights and responsibilities of the parties in connection with a German Shepherd dog named Martina, including the training and certification of the animal in accordance with the Schutzhund method of dog training and the rights to Martina's offspring . . . . [I]t is not disputed that the parties entered into an oral agreement whereby plaintiff placed Martina with the defendant. As part of the agreement defendant agreed to care for the dog. Plaintiff subsequently conveyed a 50% interest in the dog with the understanding that the defendant would continue to be responsible for its care and training . . . . It was also admitted that [as of] April of 1994 the dog had not obtained the one or more of the certifications the plaintiff had sought and that in April 1995 [the plaintiff] demanded the return of the dog . . . . [I]t was agreed at trial that Martina was spayed at the defendant's request in 1996." (Corrected report.)
According to the referee, the defendant had four defenses: "(1) that the agreement was too vague and indefinite to be enforced; (2) that since it was an oral agreement which was not to be performed within one year CT Page 15119 enforcement was barred under the statute of frauds; (3) that the defendant performed all the obligations required by him and (4) that any failure to perform was excused on the grounds that it would have been impossible considering a particular medical condition to which the dog in question is alleged to have suffered from." (Corrected report.)[1] The disease Martina suffers from is called megaesophagus.
The referee reached the following conclusions that are relevant to the pending motions: the "sum of the evidence demonstrated that the parties had agreed as to who was to have custody and possession of the animal, who was to train it, what kind of certification was expected as a result of the training, that the dog was to be bred and that the process of breeding would go to the plaintiff'; "after the plaintiff conveyed a 50 [percent] interest in Martina to the defendant Mr. Henvy became entitled to a portion of the profits in an amount which corresponded to his ownership interest since [there] was no credible testimony as to any other arrangement"; the agreement was sufficiently detailed to be enforceable; the statute of frauds did not bar enforcement because "each party performed numerous acts in support of the agreement that would constitute part performance"; the defendant failed to establish his defenses of impossibility of performance; the defendant failed to establish his claim of accord and satisfaction; the defendant failed to notify the plaintiff prior to having Martina spayed; the spaying "had the effect of destroying the economic value of this animal"; the defendant breached the agreement;"based upon defendant's breach of the agreement there is no doubt that the measure of damages suggested by Judge Fuller in the case cited by the plaintiff, the value of the dog, is the appropriate standard to use in this matter"; "[b]ased upon the testimony of all the witnesses the undersigned finds that value of Martina prior to the action of the defendant in ordering that the dog be spayed to be $54,000"; and that "[a]s a one half-owner plaintiff's damages would amount to the sum of $27,000."
The defendant objects to the acceptance of the corrected report of the attorney trial referee for eight reasons, which may be summarized as follows: (1) the referee failed to file the corrected report as soon as practicable; (2) the referee's conclusion that the agreement was enforceable could not be reached on the facts; (3) the referee incorrectly concluded that the plaintiff rebutted the defendant's statute of fraud claim; (4) the referee failed to strike a sentence in his report that stated, "[i]n addition other witnesses testified that it was their experience as dog breeders that the hereditary form of this disease evidenced itself much earlier than in the case of Martina," because this testimony came from dog breeders who were incompetent to give such testimony and the plaintiff failed to establish a sufficient foundation for their testimony; (5) the referee's conclusion that the defendant CT Page 15120 failed to establish his defense of impossibility of performance and, consequently, his defense of accord and satisfaction was not supported by the facts; (6) the measure of damages in this case should have been one of contract, not tort; (7) the referee's conclusion that the value of the dog was $54,000 was not supported by the evidence; (8) the referee's conclusion, that it was incumbent upon the defendant to notify the plaintiff prior to taking an action which had the effect of destroying the economic value of the dog, could not be reached on the facts because as a co-owner the defendant had a right to protect the health of the dog.
The defendant also takes nine exceptions to the corrected report pursuant to § 19-13 of the Practice Book. As the court has noted, however, § 19-13 was repealed, effective January 1, 2000. Accordingly, the court need not consider this motion.
The court has reviewed the record, excerpts of which were provided by the defendant, and notes at the outset that nowhere in his objection does the defendant refer to pages in the voluminous record of the proceedings before the referee in support of his argument.
The standard of review the court applies when considering objections to an attorney trial referee's report is clear error. Meadows v. Higgins,249 Conn. 155, 162, 733 A.2d 172 (1999); Elgar v. Elgar, 238 Conn. 839,848-49, 679 A.2d 937 (1996). "It is axiomatic that [a] reviewing authority may not substitute its findings for those of the trier of facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees. See Practice Book § 443 [now § 19-17] . . . . This court has articulated that attorney trial referees and factfinders share the same function . . . whose determination of the facts is reviewable in accordance with well established procedures prior to the rendition of judgment by the court . . . . The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous . . . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses . . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Brackets in original; citations omitted; internal quotations omitted.) Meadows v. Higgins, supra, 162. "The attorney trial referee sits only as a fact finder." National Elevator Industry Pension, Welfare Educational Fund v. Scrivani, 31 Conn. App. 728, 733, 626 A.2d 1332
(1993), rev'd on other grounds, 229 Conn. 817, 644 A.2d 327 (1994). The court "cannot find additional facts or reject others unless a material fact has been found without evidence." TDS Painting Restoration, Inc.CT Page 15121v. Copper Beech Farm, Inc., 45 Conn. App. 743, 751, 699 A.2d 173, cert. denied, 243 Conn. 908, 701 A.2d 338 (1997). It is this court's nondelegable duty to render judgment based on the attorney fact finder's report. National Elevator Industry Pension, Welfare Educational Fundv. Scrivani, supra, 733.
The defendant's first objection regards the length of time that it took the referee to rule on the defendant's motion to correct. The defendant cites Crowley Holmes v. Trimboli, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 317588 (August 6, 1999, Skolnick, J.) (25 Conn.L.Rptr. 269), to support his argument that a delay of eleven months is too long, and beyond the parameter of "as soon as practicable" under then Practice Book § 19-12 (now repealed), and constitutes a sufficient reason for the court not to accept the corrected report. In that case, the court stated: "untimeliness is not an express ground for either excepting to a referee's report . . . or for objecting to the acceptance of such a report . . . . This court further recognizes that the time constraint contained in Practice Book § 19-12, `[a]s soon as practicable, ' lacks definiteness, unlike time limitations in other sections of Chapter 19; see e.g., Practice Book § 19-4 (referee must render report within 120 days from completion of trial.)" Id., 269. Nonetheless, the court found that an unexcused delay of seven months after the filing of the motion to correct was not "as soon as practicable" within the meaning of § 19-12, and, accordingly, the court refused to accept the referee's report. The plaintiff counters this argument by citing, Rent-A-Tool Equipment Corp. v. Perna, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 135364 (August 28, 1996, Lewis, J.), where the court, in footnote two of the opinion, found that there was no prejudice in a ten month delay and refused to order a new trial. This court agrees with the Perna view. Although the court agrees that a delay of eleven months may be too long in some circumstances, there should be a no per se rule against acceptance if the delay does not work a prejudice. Here, the defendant shows no prejudice suffered as a result of the delay. It is therefore pointless to order a new trial on account of this untimely delay if the defendant has not been prejudiced. Accordingly, the defendant's first objection is denied.
Second, the defendant argues that the referee's conclusion that the agreement was enforceable is not supported by the facts found at trial because: "there was no agreement as to when the dog was to be bred, the number and kind of litters [Martina] might have produced, and what was to happen if breeding could result in a serious health risk to the dog." (Objection, p. 1.) In response, the defendant contends that this is a finding of fact that has adequate support in the record. CT Page 15122
"The existence of a contract is a question of fact to be determined by the trier on the basis of all the evidence." (Internal quotation marks omitted.) John M. Glover Agency v. RDB Building, LLC, 60 Conn. App. 640,643, ___ A.2d ___ (2000). So long as the minds of the of the parties have met, and the essential elements are not left open, a contract is enforceable. LR Realty v. Connecticut National Bank, 53 Conn. App. 524,535, 732 A.2d 181, cert. denied, 250 Conn. 901, 734 A.2d 984 (1999). In particular, the referee's report makes the following finding: "The sum of the evidence demonstrated that the parties had agreed as to who was to have custody and possession of the animal, who was to train it, what kind of certification was expected as a result of the training, that the dog was to be bred and that the proceeds of breeding would go to the plaintiff." (Corrected report, ¶ 5.) The report concludes in paragraph six that the agreement is enforceable, even though the parties did not reach agreement on all the terms. The court agrees with the report's finding that the essential terms of the contract are sufficiently clear to enforce the agreement.[2] The defendant was to possess Martina; train her; achieve a certain level of certification of her training; and to facilitate her breeding, as this was the primary purpose of the contract. Because the defendant has not shown that this finding is clearly erroneous, the court must affirm it. Meadows v. Higgins, supra,249 Conn. 162.
Third, the defendant objects to the conclusion that the plaintiff rebutted the defendant's statute of frauds claim because, according to the defendant, there was no part performance as to the breeding of Martina. The defendant's challenge to this conclusion lacks merit. The record is replete with evidence to support the referee's finding that the acts of the parties were of such a character that could be accounted for only by the existence of some contract. "[A]cts on the part of the promisee may be sufficient to take a contract out of the statute [of frauds] if they are such as clearly refer to some contract in relation to the matter in dispute . . . ." (Citations omitted; internal quotation marks omitted.) Ubysz v. DiPietro, 185 Conn. 47, 54, 440 A.2d 830
(1981); McNeil v. Riccio, 45 Conn. App. 466, 470, 696 A.2d 1050 (1997). For example, the report finds that the defendant took possession of Martina, trained her and, ultimately, as a result of the defendant's work, she achieved Shutzhund 1 certification. (Corrected report, ¶¶ 7-8.) This, taken with the finding that the plaintiff was a breeder who entered this contract for pecuniary gain, is sufficient to draw the conclusion that there was sufficient part performance to rebut the defendant's statute of frauds claim. Upon review of the record, the court finds the that testimony of several witnesses, including the plaintiff, supports these findings, which the defendant has failed to cite to rebut. CT Page 15123
Fourth, the defendant claims that the referee erred in denying his request made in his motion to correct to delete a sentence in the report which reads: "In addition other witnesses testified that it was their experience as dog breeders that the hereditary form of this disease evidenced itself much earlier than in the case of Martina." (Objection, p. 2.) According to the defendant, the referee overruled his objection to this testimony during the trial. The plaintiff argues that this objection goes to the weight of the testimony presented at trial, rather than admissibility, and that the defendant's witnesses were competent to testify because they are "very experienced breeders." (Plaintiff's response to objections, p. 2.) [T]he competency of a witness is a matter peculiarly within the discretion of the trial court," here, the attorney trial referee, "and [his] ruling will be disturbed only in a clear case of abuse or of some error in law." (Internal quotation marks omitted.)State v. Aponte, 249 Conn. 735, 758, 738 A.2d 117 (1999). Moreover, it was for the trier of fact, not this court, to determine the credibility of witnesses and assess the weight of the testimony. Childs v. Bainer,235 Conn. 107, 112, 663 A.2d 398 (1995). The referee's determination regarding the credibility of the defendant's witnesses is not clearly erroneous, and the court will not disturb it.
Fifth, the defendant objects to the conclusion made in the report that "defendant has failed to establish his defense of impossibility of performance and consequently his claim of accord and satisfaction." The defendant argues that the conclusion "could not properly be reached on the basis of the subordinate facts found, because the only medical testimony in the case indisputably established that there was a serious health risk to the dog if she were bred." (Objection, p. 2.) The plaintiff argues that there was "substantial evidence that expert dog breeders have successfully bred dogs with megaesophagus," and that "there has been no showing that this would satisfy the doctrine of impossibility of performance."
A party claiming impossibility of performance must show: "(1) the event made the performance impracticable; (2) the nonoccurrence of the event was a basic assumption on which the contract was made; (3) the impracticability resulted without the fault of the party seeking to be excused; and (4) the party has not assumed a greater obligation than the law imposes." O'Hara v. State, 218 Conn. 628, 637, 590 A.2d 948 (1991). The determination of impossibility of performance involves questions of fact, and, again, this court may not upset any finding of fact unless it is clearly erroneous. Meadows v. Higgins, supra, 249 Conn. 162. The court has reviewed the record and finds ample support for the referee's finding that the defendant failed to establish impossibility as a defense. For example, Frances Paulin, the defendant's veterinarian, testified that dogs with megaesophagus can probably be bred and do fine. (Testimony of CT Page 15124 Paulin, July 10, 1998, p. 55.) Dyan Merkel, a dog' breeder, testified that she had bred a male German Shepherd with megaesophagus and none of his offspring had the disease. (Testimony of Merkel, July 10, 1998, p. 13.) Barbara Lopez, also a dog breeder, testified that she had successfully bred two female dogs with megaesophagus. (Testimony of Lopez, November 12, 1998, p. 7.) Accordingly, the defendant's objection is overruled.
Sixth, the defendant complains that the referee applied the wrong measure of damages in making his recommendation as to damages, arguing that "[t]he conclusion of the [referee] that the measure of damages is [the] `value of the dog' . . . could not properly be reached on the basis of the subordinate facts, because this was a contract cause of action, not a tort cause of action." (Citation omitted.) (Defendant's objection, p. 2.) As to the measure of damages, the report concludes that "based upon defendant's breach of the agreement there is no doubt that the measure of damages suggested by Judge Fuller in the case cited by the plaintiff, the value of the dog, is the appropriate standard to use in this matter." (Corrected report, ¶ 12.) In the case cited by the plaintiff; Altieriv. Nanavati, 41 Conn. Sup. 317, 573 A.2d 359 (1989); Judge Fuller used "market value" as the measure of damages. Id., 320. In Altieri, however, the plaintiff's claim rested on veterinary malpractice, whereas here, as the defendant correctly notes, the claim is breach of contract. The court notes that during oral argument before this court on August 9, 2000, the defendant argued not that the referee applied the wrong measure of damages, but rather that the amount was simply too high. (Transcript, oral argument, August 9, 2000, pp. 14-18.)
"[C]ontract damages are ordinarily based on the injured party's expectation interest and are intended to give him the benefit of the bargain by awarding a sum of money that will, to the extent possible, put him in as good a position as he would have been in had the contract been performed. (Internal quotation marks omitted.) Colby v. Burnham,31 Conn. App. 707, 721, 627 A.2d 457 (1993); see also Frederick Raff Co.v. Murphy, 110 Conn. 234, 242, 147 A. 709 (1929). Such damages, moreover, are to be determined at the time of the breach. Colby v.Burnham, supra, 721." (Internal quotation marks omitted.) Keefe v.Norwalk Cove Marina, Inc., 57 Conn. App. 601, 610, 749 A.2d 1219, cert. denied, 254 Conn. 903, 755 A.2d 881 (2000). It is well established that where the claimed breach is for lost profits, the plaintiff must demonstrate his or her loss to a reasonable degree of certainty. 3 Restatement (Second), Contracts § 352. If the plaintiff does not establish his or her loss to a reasonable degree of certainty, the measure of damages is the diminution of the fair market value of the property caused by the breach. 3 Restatement (Second), Contracts § 348 (2)(a). "The determination of damages involves a question of fact that CT Page 15125 will not be overturned unless it is clearly erroneous." (Internal quotation marks omitted.) Beverly Hills Concepts, Inc. v. Schatz Schatz, Ribicoff Kotkin, 247 Conn. 48, 68, 717 A.2d 724 (1998).
Although the referee's conclusion is not well articulated, this court finds sufficient support for it. Upon an examination of the corrected report and the record, the court finds that there was a breach of contract, that the contract was primarily intended to raise profits through the sale of puppies, that the value of future profits is speculative and that the plaintiff failed to demonstrate his damages to a reasonable degree of certainty, and that the appropriate measure of damages in such a case is the diminution of fair market value of Martina. The referee found that by spaying her, the defendant effectively destroyed all economic value in her. Therefore, the referee concluded that diminution in market value was equal to her value at the time of the breach, i.e., $54,000, and the defendant's share in the co-ownership arrangement was $27,000.
The defendant argued that the referee's determination was "one hundred percent speculative," and that the fair market value should have been somewhere between "zero and fifteen hundred [dollars]." (Transcript, oral argument, August 9, 2000, pp. 14-16.) The defendant's disagreement is, again, with the referee's acceptance of the credibility and weight of the testimony by the plaintiff. According to the defendant, the plaintiff testified that he had paid $18,000 for each of the two dogs who had the same father as Martina, and that these dogs were four and five years old at the time. (Transcript, oral argument, August 9, 2000, pp. 14-15.)[3]
The plaintiff also testified that when these other two dogs were younger, they were worth three to four times of that amount. (Transcript of Fleischer, November 12, 1998, pp. 7-8.) According to the defendant, the referee arrived at the determination of damages in the amount of $34,000 by multiplying $18,000 three times. (Transcript, oral argument, August 9, 2000, p. 16.) The defendant's argument is with the referee's assessment of the credibility and weight of the testimony by witnesses. This is precisely the kind of determination by a trier of fact that this court cannot overturn absent a showing of clear error. Meadows v.Higgins, supra, 249 Conn. 162. Accordingly, the defendant's objection is overruled.
Seventh, the defendant objects that the $54,000 value assigned to Martina was "purely speculative" because there was no evidence "as to the effect on the value that was due to the form of megaesophagus which the [referee] acknowledged could result in impairment of the value of the litters (paragraph 11, corrected report)." (Objection, pp. 2-3.) The plaintiff argues that there was ample evidence to support this finding. The court agrees. CT Page 15126
"That damages may be difficult to assess is, in itself, insufficient reason for refusing them once the right to damages has been established."Griffin v. Nationwide Moving Storage Co., 187 Conn. 405, 420,446 A.2d 799 (1982). "There are no unbending rules as to the evidence by which [damages for breach of contract] are to be determined . . . . The general rule in breach of contract cases is that the award of damages is designed to place the injured party, so far as can be done by money, in the same position as that which he would have been in had the contract been performed . . . . In making its assessment of damages for breach of [any] contract the trier must determine the existence and extent of any deficiency and then calculate its loss to the injured party." (Citation omitted; internal quotation marks omitted.) Rejouis v. Greenwich Taxi,Inc., 57 Conn. App. 778, 784, 750 A.2d 494, cert. denied, 254 Conn. 906,755 A.2d 882 (2000). Again, there was adequate evidence at trial as to Martina's value. Accordingly, the defendant's objection is overruled.
Eighth, and finally, the defendant argues that the referee's conclusion, that it was incumbent upon the defendant to notify the plaintiff prior to taking an action which had the effect of destroying the economic value of the dog, could not be reached on the facts because as a co-owner the defendant had a right to protect the health of the dog. The referee found that it was not so dangerous to breed Martina with her condition that the contract was rendered impossible, or stated another way, that she could have been allowed to breed. The referee also found that by spaying Martina. the defendant destroyed all economic value in Martina. (Corrected report, ¶ 10.) The referee's statement that it was incumbent on the defendant to inform the plaintiff is not material to the referee's conclusion that the defendant breached the contract.
Upon an examination of the attorney trial referee's report and the record, the court concludes that judgment should enter in accordance with the referee's recommendations. Accordingly, judgment is entered for the plaintiff in the sum of $27,000, plus costs.
White, J.